1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

ANDREA S. JARMON,

9
                            Plaintiff,

10
        v.

11
BOARD OF INDUSTRIAL INSURANCE
APPEALS, *et al.*,

12
                            Defendants.

13

Case No. C25-5735-MLP

ORDER GRANTING MOTION TO
DISMISS

14

15

## I.    INTRODUCTION

16
        This matter is before the Court on the Motion to Dismiss filed by Defendants the Board

17
of Industrial Insurance Appeals ("BIIA"), Chief Judge Anita Booker-Haye, Acting Chief Judge

18
Christopher Swanson, Chief Judge Holly A. Kessler, Board Chair Isabel A. Cole, and Chair

19
Member Jack S. Eng, in their official capacities ("Employee-Defendants"; collectively with the

20
BIIA, "Defendants"). (Mot. (dkt. # 13).) Plaintiff Andrea S. Jarmon ("Ms. Jarmon") did not

21
timely file a response. (*See* dkt.) Having considered the parties' submissions, the governing law,

22
and the balance of the record, the Court GRANTS Defendants' Motion (dkt. # 13). [1]

23

_____

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 8.)

## II.    LEGAL STANDARD

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009) (citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III.    BACKGROUND[2]

Ms. Jarmon was employed by the BIIA as an Industrial Appeals Hearings Judge 3 ("IAJ") from November 2020 to August 2022. (First Amended Complaint ("FAC") (dkt. # 10),

---

[2] Reviewing Defendants' Motion, the Court accepts as true all facts alleged in the FAC and construes them in the light most favorable to Ms. Jarmon. *See Snyder & Associates Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).

ORDER GRANTING MOTION TO DISMISS - 2

1    ¶¶ 5.3, 5.80-5.81.) Her duties involved presiding over hearings and issuing written decisions, a

2    role that was initially remote due to the COVID-19 pandemic. (*Id.*, ¶¶ 5.4-5.6.)

3            In August 2021, Washington State instituted a COVID-19 vaccination requirement for all

4    state employees. (FAC, ¶ 5.12.) This mandate, and subsequent directives, included provisions for

5    religious exemptions and accommodations, provided they did not create an "undue hardship" for

6    the employer. (*Id.*, ¶¶ 5.13, 5.15-5.16, 5.27-5.29, 5.31-5.33, 5.55-5.57.)

7            Ms. Jarmon describes Islam as foundational to her life and asserts that her "sincerely held

8    religious beliefs prohibited her from taking the COVID-19 vaccine." (FAC, ¶¶ 5.1-5.2.) She

9    affirmed this belief in her exemption request, noting she has not received vaccines or medicine as

10   an adult and that her belief is "unwavering." (*Id.*, ¶ 5.18, 5.81.).

11           Consequently, on September 1, 2021, Ms. Jarmon requested a religious exemption, which

12   the BIIA approved on September 23, 2021. (FAC, ¶¶ 5.17-5.18.) This accommodation allowed

13   her to work full-time teleworking with remote proceedings, and the BIIA explicitly stated it did

14   not create "undue hardship." (*Id.*, ¶¶ 5.20-5.22.) The approval also noted that the accommodation

15   would be periodically reviewed and that the BIIA would re-engage in an interactive process for

16   adjustments. (*Id.*, ¶¶ 5.23-5.25.) The BIIA extended Ms. Jarmon's accommodation multiple

17   times into 2022. (*Id.*, ¶¶ 5.36-5.53.)

18           The BIIA announced on May 10, 2022, that optional in-person hearings would resume,

19   though this notice did not require employees to return to the office or terminate existing

20   accommodations. (FAC, ¶ 5.58.) On June 30, 2022, Governor Inslee's Directive 22-13 made

21   COVID-19 vaccination a permanent employment condition, still including provisions for

22   religious accommodations. (*Id.*, ¶¶ 5.61-5.62.)

23

1    On July 14, 2022, the BIIA notified Ms. Jarmon of a meeting to discuss her vaccine

2    accommodation status, citing the resumption of in-person hearings. (FAC, ¶¶ 5.64-5.65.) Ms.

3    Jarmon alleges that she had only one case requiring an in-person hearing and that the BIIA

4    continued to informally accommodate other employees and split IAJ tasks. (*Id.*, ¶¶ 5.66-5.67.)

5    The day before the scheduled meeting, however, the BIIA sent Ms. Jarmon a "Notice of Intent to

6    Separate," stating "no further accommodation can be made" and placing her on leave without

7    pay. (*Id.*, ¶¶ 5.67-5.69.) Ms. Jarmon asserts this was an ultimatum, not an interactive process.

8    (*Id.*, ¶¶ 5.70-5.71.) The BIIA subsequently denied her requests for an extension and terminated

9    her employment effective August 17, 2022, stating she was "no longer qualified." (*Id.*,

10   ¶¶ 5.80-5.81.)

11       Following her termination, Ms. Jarmon filed a grievance. The BIIA responded that her

12   proposed remedy would remove an "essential function" of the IAJ role. (FAC, ¶¶ 5.82-5.83.) Ms.

13   Jarmon alleges that the BIIA continued to operate with employees telecommuting and advertised

14   her former position as "flexible/hybrid" or primarily remote after her termination. (*Id.*, ¶ 5.85.)

15       Ms. Jarmon filed this action in Pierce County Superior Court on July 23, 2025. (Dkt. # 1,

16   Ex. A.) Defendants removed the case to this Court on August 19, 2025. (*Id.* at 1-5.) On

17   September 15, 2025, after Defendants filed an initial motion to dismiss all claims, Ms. Jarmon

18   filed her FAC, adding individual defendants and new claims. (*See generally* FAC.) This

19   prompted Defendants to withdraw their motion. (*See* dkt., 9/16/25.)

20       On September 29, 2025, Defendants filed the instant Motion to Dismiss. (Mot.) Ms.

21   Jarmon's response was due on October 20, 2025, but she failed to timely respond. *See* W.D.

22   Wash. Local Civ. R. LCR 7(d)(4). Defendants timely replied, requesting dismissal. (Dkt. # 15.)

23   Three days later, Ms. Jarmon filed an untimely surreply asking the Court to consider her

opposition to Defendants' withdrawn motion as her opposition to the instant Motion.[3] (*See* dkt. # 16.)

Ms. Jarmon's prior opposition largely consists of text copied verbatim from her FAC. (*Compare* FAC at 5-21, ¶¶ 5.1-5.86; *with* Prior Resp. (dkt. # 11) at 2-18, ¶¶ 5.1-5.86.) It also fails to address Defendants' legal arguments concerning the Employee-Defendants and new claims. (*Compare* dkts. ## 1, 5, 11 (original pleadings and related filings); *with* dkts. ## 10, 13 (amended pleadings and related filings).) Despite Ms. Jarmon's untimely and deficient prior filings, the Court considers the response to the earlier motion to dismiss, given its preference for merits-based resolutions.

Separately, Defendants filed a surreply after Ms. Jarmon's untimely surreply. (Dkt. # 17.) Because neither surreply complied with the requirements set forth by LCR 7(g), the Court STRIKES both surreplies (dkt. ## 16-17) as improper.

## IV.    ANALYSIS

Ms. Jarmon asserts the following eight causes of action:

(1)    "Deprivation of Free Exercise of Religion" in violation of U.S. Const. Am. I, and Wash. Const. Art. I, Sec. 11; "Deprivation of Life, Liberty, or Property" in violation of Wash. Const. Art. I, Sec. 3; and "Deprivation of Privacy" in violation of Wash. Const. Art. I, Sec. 7 (FAC at 21-22, ¶¶ 6.1-7.1);

(2)    "Discrimination" under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and RCW 49.60.180 (FAC at 23-24, ¶¶ 7.1-7.9);

(3)    "Failure to Accommodate" under Title II (FAC at 24-26, ¶¶ 8.1-8.11);

---

[3] Ms. Jarmon's untimely reply further violated this Court's local rules by having an improper title and omitting the required word-count certification. *See* LCR 7(e)(6), 10(e)(2).

1    (4)    "Discrimination" under the Washington Law Against Discrimination ("WLAD"),

2  RCW Ch. 49.60 (FAC at 26, ¶¶ 9.1-9.3);

3    (5)    "Failure to Accommodate" under the WLAD (FAC at 26-27, ¶¶ 10.1-10.4);

4    (6)    "Disparate Impact" under the WLAD (FAC at 27-28, ¶¶ 11.1-11.7);

5    (7)    "Breach of Contract" (FAC at 28-29, ¶¶ 12.1-12.7); and

6    (8)    "Wrongful Termination" in violation of public policy (FAC at 29-30,

7  ¶¶ 13.1-13.5).

8    The Court first addresses two threshold issues—whether Defendants have sovereign

9  immunity and whether the Employee-Defendants are properly named—before addressing each

10  cause of action in turn.

11    **A.    Eleventh Amendment Immunity**

12    The Eleventh Amendment shields states from suit in federal court. *Fed. Mar. Comm'n v.*

13  *S.C. State Ports Auth.*, 535 U.S. 743, 751 (2002). Federal courts thus lack jurisdiction to

14  entertain private suits against a state unless the state waives its immunity or Congress validly

15  abrogates it. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011).

16    Ms. Jarmon brings federal causes of action against the State for monetary relief under 42

17  U.S.C. § 1983, which allows litigants to sue state actors in their individual capacities for federal

18  constitutional violations. *Hafer v. Melo*, 502 U.S. 21, 31 (1991). A state agency, however, is not

19  a "person" for § 1983 purposes and therefore cannot be sued for constitutional violations unless

20  it affirmatively waives sovereign immunity. *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022).

21  Moreover, "[s]tate officers in their official capacities, like States themselves, are not amenable to

22  suit for damages under § 1983." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24

23  (1997). Nor has Congress abrogated state immunity for claims based on state common or

1  contract law. *Furfaro v. City of Seattle*, 144 Wn.2d 363, 375-76 (Wash. 2001). Accordingly, Ms.

2  Jarmon's claims arising under § 1983 and common law fail as a matter of law.

3        Ms. Jarmon's claims for damages under state constitutional violations are likewise

4  barred, as no private right of action for damages exists under the Washington State Constitution.

5  *Lubers v. Hinson*, 2024 WL 810552, at *2 (W.D. Wash. Feb. 27, 2024). Furthermore,

6  Washington only waives immunity for state statutory and common law tort claims when the

7  claimant satisfies the pre-filing notice requirements set forth in RCW 4.92.100. *See Hust v.*

8  *Wyoming*, 372 Fed. Appx. 708, 710 (9th Cir. 2010). Here, Ms. Jarmon failed to meet this

9  condition precedent for all claims against Employee-Defendants and the privacy claim against

10  the BIIA, mandating their dismissal.

11      **B.**      **Employee-Defendants**

12        Ms. Jarmon's claims against the Employee-Defendants fail for three distinct reasons.

13  First, naming them in their official capacities is redundant, duplicating the claims against the

14  BIIA.[4] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Vance v. Cnty. of Santa Clara*, 928 F.

15  Supp. 993, 996 (N.D. Cal. 1996). Second, Ms. Jarmon fails to allege specific conduct for any

16  individual Employee-Defendant. The FAC vaguely refers to "Defendant's" or "Defendants'"

17  actions (*see* FAC, ¶¶ 2.7-2.9, 5.36-5.38, 5.43-5.45, 5.50), which is plainly insufficient for

18  pleading individual liability. *Taylor v. Villanueva*, 2020 WL 6586293, at *3 (C.D. Cal. Apr. 17,

19  2020) (dismissal of defendants for whom liability is not sufficiently pled is proper). Third, as

20  noted, Ms. Jarmon did not provide the required pre-filing notice under RCW 4.92.100. The

21  claims as to the Employee-Defendants are therefore dismissed.

22

23              
[4] Although the caption of the FAC indicates that two of the Employee-Defendants are sued in their individual capacity (FAC at 1), the body of the FAC makes clear they are sued in their official capacities. (*Id.*, ¶¶ 2.8-2.9.)

1    **C.    Free Exercise of Religion—First Cause of Action**

2        Ms. Jarmon alleges Defendants violated her federal and state free exercise rights by

3    requiring vaccination, thereby forcing a choice between her religion and employment. (FAC,

4    ¶¶ 6.1-7.1.)

5        *1.    Federal Constitutional Claims*

6        To assert a religious exemption on federal constitutional grounds, a plaintiff "must plead

7    a sufficient nexus between her religion and the specific belief in conflict with the work

8    requirement." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 895 (9th Cir. 2025). Ms.

9    Jarmon's conclusory assertion that her "sincerely held religious beliefs prohibited her from

10   taking the COVID-19 vaccine" fails to meet this standard (FAC, ¶ 5.2). *See Weiss v. Permanente*

11   *Med. Group, Inc.*, F. Supp. 3d, 2024 WL 4353006, at *4 (N.D. Cal. Sept. 30, 2024) (explaining

12   that generic explanations of a religious conflict are insufficient to state a claim because they

13   would result in a limitless excuse for avoiding all unwanted obligations). Ms. Jarmon therefore

14   fails to plead a prima facie case for religious accommodation. *Bolden-Hardge v. Office of*

15   *California State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023).

16       Moreover, even if the claim was adequately pleaded, Defendants are entitled to qualified

17   immunity. District courts have consistently found officials and agencies immune from challenges

18   to public health orders and vaccine mandates during the COVID-19 pandemic. *See, e.g.,*

19   *Strandquist v. Washington State Dep't of Soc. & Health Servs.*, 2024 WL 4645146, at *7 (W.D.

20   Wash. Oct. 31, 2024), *reconsideration denied,* 2024 WL 4979859 (W.D. Wash. Dec. 4, 2024);

21   *Sinclair v. Blewett*, 2024 WL 21434, at *4 (D. Or. Jan. 2, 2024). Ninth Circuit precedent

22   unambiguously affirms this reasoning. *See*, *e.g.*, *Slidewaters LLC v. Washington State Dep't of*

23   *Labor & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021); *Bacon v. Woodward*, 2024 WL 3041850, at *1

1    (9th Cir. June 18, 2024); *Johnson v. Kotek*, 2024 WL 747022, at *3 (9th Cir. Feb. 23, 2024), *cert.*

2    *denied,* 145 S. Ct. 378 (2024), *reh'g denied,* 145 S. Ct. 998 (2024); *Armstrong v. Newsom*, 2021

3    WL 6101260, at *1 (9th Cir. Dec. 21, 2021).

4              2.       *State Constitutional Claims*

5              Under Washington law, a free exercise claim requires both a sincere religious belief and a

6    governmental action that "burdens the exercise of religion." *Chung v. Washington*

7    *Interscholastic Activities Ass'n*, 538 F. Supp. 3d 1170, 1191 (W.D. Wash. 2021). Importantly, a

8    "slight inconvenience" is insufficient; the State must instead impose a "substantial burden." *City*

9    *of Woodinville v. Northshore United Church of Christ*, 166 Wn.2d 633, 642-44 (Wash. 2009). To

10   establish a "substantial burden" a person must show "the coercive effect of the enactment as it

11   operates against [her] in the practice of [her] religion." *State v. Motherwell*, 114 Wn.2d 353, 361

12   (Wash. 1990) (quoting *Witters v. Comm'n for the Blind*, 112 Wn.2d 363, 371 (1989)). Crucially,

13   the challenged state action must somehow compel or pressure the individual to violate a tenet of

14   her religious belief. *Motherwell*, 114 Wn.2d at 361 (citing *Witters*, 112 Wn.2d at 371).

15             Applying this standard, Ms. Jarmon categorically fails to demonstrate that Defendants'

16   actions inflicted a "substantial burden" on her state free exercise rights. The vaccine mandate did

17   not compel individuals to be vaccinated, it established conditions of employment for certain state

18   workers. Once the BIIA determined that Ms. Jarmon's remote accommodation was no longer

19   viable given the return to in-person hearings, she retained the choice to comply with the

20   vaccination requirement and remain employed by the BIIA or decline vaccination and seek

21   employment elsewhere. As other courts in this District have found, a requirement that employees

22   be vaccinated or face termination does not constitute a substantial burden on free exercise. *See*,

23   *e.g.*, *Rosa v. City of Issaquah in & for Washington*, 2025 WL 2733672, at *25 (W.D. Wash.

ORDER GRANTING MOTION TO DISMISS - 9

Sept. 25, 2025); *Seagraves v. Dep't of Child. Youth & Fams.*, 2025 WL 1031306, at *5 (W.D.

Wash. Apr. 7, 2025), *reconsideration denied*, 2025 WL 1180380 (W.D. Wash. Apr. 23, 2025);

*Rolovich v. Washington State Univ.*, 2023 WL 3733894, at *6 (E.D. Wash. May 30, 2023).

3.    Due Process

Ms. Jarmon's broad assertion that she was "deprived of life, liberty, and property" (FAC,

¶¶ 6.6-7.1), is unavailing. This Court has already found that the Proclamation, along with its

exemptions and accommodations requirements, provided the requisite "notice and an opportunity

to respond" for due process purposes. *Pilz v. Inslee*, 2022 WL 1719172, at *7 (W.D. Wash. May

27, 2022), *aff'd*, 2023 WL 8866565 (9th Cir. Dec. 22, 2023).

To the extent Ms. Jarmon asserts a substantive due process claim based on a fundamental

right to "autonomy over one's own body," this argument similarly fails. (FAC, ¶ 6.9.) The

Proclamation and its requirements did not abrogate bodily autonomy; rather, they established

general standards for employment. *See Wise v. Inslee*, 2022 WL 1243662, at *5 (E.D. Wash.

Apr. 27, 2022). In this and other contexts, courts have repeatedly held that there is no legal right

to refuse vaccination *and remain employed. See Kheriaty v. Regents of the Univ. of Cal.*, 2022

WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (no "fundamental right" to be free from a vaccine

mandate in a workplace); *see also*, *e.g.*, *Rosa*, 2025 WL 2733672, at *28; *Brock v. City of

Bellingham*, 2025 WL 254725, at *14 (W.D. Wash. Jan. 21, 2025); *Boysen v. PeaceHealth*, 2024

WL 3888682, at *9 (D. Or. Aug. 19, 2024); *Wise*, 2022 WL 1243662, at *5.

4.    State Privacy Right

Finally, Ms. Jarmon's purported state privacy claim fails on multiple grounds. (FAC,

¶ 6.9.) As a threshold matter, courts have consistently refused to recognize a private right of

action for damages under the state constitution when a common law invasion of privacy tort

claim exists. *See, e.g., Reid v. Pierce Cnty.*, 136 Wn.2d 195, 213-14 (Wash. 1998). Even if Ms. Jarmon intended a common law privacy claim, however, it also fails, as she failed to provide the required tort claim notice. *Novelozo v. Port of Seattle*, 2025 WL 2390433, at *7 (W.D. Wash. Aug. 18, 2025). Nor does Ms. Jarmon allege a "highly offensive" public disclosure of her private life, which the vaccine mandate does not constitute. *See Martinez v. Eastside Fire & Rescue*, 2025 WL 1654649, at *11-12 (W.D. Wash. June 10, 2025).

### D.    Title II—Second and Third Causes of Action

Ms. Jarmon's claims for discrimination and failure to accommodate under Title II of the ADA are fundamentally misplaced. Title II ensures equal access to state programs, services, and activities for individuals with disabilities. *See* 42 U.S.C. § 12131. Crucially, it does not apply to employment-related claims, which fall exclusively under Title I. *Hanson v. Oregon*, 557 F. Supp. 3d 1123, 1130 (D. Or. 2021); 42 U.S.C. § 12112. To that end, the Eleventh Amendment bars private monetary claims against states for violations of Title I. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 n. 9 (2001). Even assuming Title II *were* applicable to employment, Ms. Jarmon fails to allege or suggest an impairment that substantially limits a major life activity. (*See* FAC; *see also* 42 U.S.C. § 12102 (ADA disability definition).)

### E.    WLAD—Fourth Through Sixth Causes of Action

Ms. Jarmon asserts three claims under the WLAD: discrimination, failure to accommodate, and disparate impact. (FAC, ¶¶ 9.1-11.7.)

#### 1.    Discrimination—Fourth Cause of Action

To establish a prima facie case of discrimination by disparate treatment, a plaintiff must show that (1) she belongs to a protected class; (2) she was treated unfavorably in the terms or conditions of her employment; (3) this treatment was less favorable than a similarly situated,

nonprotected employee; and (4) she and the nonprotected employee were performing substantially the same work. *Billings v. Town of Steilacoom*, 2 Wn. App. 2d 1, 24 (Wash. App. Div. 2, 2017); *see also Crownover v. State ex rel. Dep't of Transp.*, 165 Wn. App. 131, 147 (Wash. App. Div. 3, 2011); *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 226-27 (Wash. App. Div. 2, 1996).

Ms. Jarmon alleges that "several BI[I]A employees requested and were granted reassignments and/or informal accommodations, . . . for various reasons" and that "Defendant was still informally making reassignments and accommodations for other employees." (FAC, ¶¶ 5.63, 5.67.) She further notes the BIIA "has continued to operate with employees telecommuting for work and conducting remote proceedings," and has continued to advertise her "position and others as 'flexible/hybrid,' and/or primarily remote." (*Id.*, ¶¶ 5.84-5.85.)

These generalized allegations regarding telecommuting, reassignments, and informal accommodations for "various reasons" are insufficient to establish that Ms. Jarmon was treated less favorably than similarly situated, non-religious employees, however. Significantly, Ms. Jarmon fails to allege any specific facts surrounding other non-religious "unvaccinated employees in the same positions as [her] that were permitted to continue working onsite or otherwise remained employed by [Defendants] despite their noncompliance with the COVID-19 vaccine requirement." *Small v. Oregon Health & Sci. Univ.*, 2024 WL 4137484, at *5 (D. Or. Aug. 5, 2024), *report and recommendation adopted,* 2024 WL 4136263 (D. Or. Sept. 9, 2024); *see also Niemeyer v. NW Permanente*, 2024 WL 4693894, at *5 (D. Or. Nov. 6, 2024); *Varkonyi v. United Launch All., LLC*, 2023 WL 4291649, at *3 (C.D. Cal. May 12, 2023). Thus, this claim is dismissed.

2.      *Failure to Accommodate—Fifth Cause of Action*

To establish a prima facie case for failure to accommodate under the WLAD, a plaintiff must allege: (1) a bona fide religious belief conflicting with an employment duty; (2) she informed her employer of this conflict; and (3) the employer subjected her to an adverse action due to her inability to fulfill the job requirement. *Trueblood v. Valley Cities Counseling & Consultation*, 748 F. Supp. 3d 988, 1001 (W.D. Wash. 2024). Importantly, an "employee's complaint must provide sufficient information about the nature of the employee's beliefs in order to state a claim for [WLAD] religious discrimination." *Bartholomew v. Washington*, 725 F. Supp. 3d 1225, 1232 (W.D. Wash. 2024) (quoted case omitted).

While the BIIA ultimately found Ms. Jarmon held a religious belief preventing her from complying with the vaccine requirement, that administrative determination does not bind this Court's analysis. *See Bartholomew*, 725 F. Supp. 3d at 1232-34. Ms. Jarmon's FAC, while detailing the sincerity and foundational role of her faith, conspicuously fails to articulate the nature of the specific religious belief in conflict with vaccine requirements, which is necessary to provide "sufficient information about the nature of the employee's beliefs." *See id.* Consequently, this claim cannot proceed.

3.      *Disparate Impact—Sixth Cause of Action*

To state a disparate impact claim under the WLAD, "the plaintiff must prove (1) there is a facially neutral policy or practice and (2) the policy falls more harshly on a protected class." *State v. City of Sunnyside*, 3 Wn.3d 279 (Wash. 2024) (internal citation omitted). In the context of vaccine mandate challenges, the relevant comparison is between those who objected on secular beliefs and those objecting on religious grounds. *Strandquist*, 2024 WL 4645146, at *14.

Ms. Jarmon's claim falters on these requirements. She identifies no specific facially

neutral employment policy causing disparate impact, nor does she demonstrate any differential

treatment. (FAC, ¶ 11.2.) She also fails to assert, for instance, that the mandate led to more

separations for people of color or that Muslims universally oppose vaccines. *See Weinberg v.*

*Twitter, Inc.*, 2024 WL 3908112, at *7 (N.D. Cal. Aug. 21, 2024). In fact, the availability of

religious accommodations suggests that religious objectors were less harshly affected than those

with secular objections, who had no such avenue. Accordingly, this claim is dismissed.

### F.    Breach of Contract—Seventh Cause of Action

Ms. Jarmon brings a breach of contract claim based on an alleged violation of the

Collective Bargaining Agreement ("CBA") and the BIIA's Religious Accommodation Letters.

(FAC, ¶¶ 12.4-12.7.)

#### 1.    CBA Violation

A plaintiff pursuing a contract claim under a CBA must first exhaust all contractual

remedies, including arbitration. *Ali v. Cooper*, 2018 WL 620187, at *8 (N.D. Cal. Jan. 30, 2018).

While Ms. Jarmon alleges pursuing a grievance through step three, she notably fails to allege

exhaustion of all applicable grievance and arbitration provisions, including pre-arbitration review

and arbitration. (*See generally* FAC.) Therefore, Ms. Jarmon's breach of contract claim

regarding the CBA is dismissed.

#### 2.    Religious Accommodation Letters

An enforceable contract requires "offer, acceptance, and consideration." *See FDIC v.*

*Uribe, Inc.*, 171 Wn. App. 683, 688 (Wash. App. Div. 3, 2012), *as amended on denial of*

*reconsideration* (Jan. 8, 2013). Ms. Jarmon has not alleged facts establishing that the BIIA's

communications about the accommodation process formed a contract imposing a duty. (*See*

FAC.) Even if these letters contained enforceable promises, the FAC indicates Defendants *did* notify Ms. Jarmon of the need to adjust accommodations and engaged in an interactive process. (*See generally* FAC.) Ms. Jarmon identifies no language promising notice of a specific duration or a particular type of interactive process. *Moore v. Effectual Inc.*, 2024 WL 1091689, at *10-11 (W.D. Wash. Mar. 13, 2024); *Landon v. Ply-Gem Windows*, 2024 WL 129018, at *5 (W.D. Wash. Jan. 11, 2024). Thus, Ms. Jarmon alleges no facts demonstrating a breach of duty, and this claim is dismissed.

### G.    Wrongful Discharge—Eighth Cause of Action

To prevail on a wrongful termination claim, a plaintiff must show that termination contravened a clear public policy mandate derived from a constitution, statute, regulation, or court decision, and that public policy-linked conduct significantly factored into the decision. *Martin v. Gonzaga Univ.*, 191 Wn.2d 712, 723-26 (Wash. 2018). Ms. Jarmon argues the Directive and Proclamation created a clear mandate allowing religious exemptions. (FAC, ¶¶ 13.2-13.4.) These documents, however, do not establish public policy, as they are not part of a "constitution, statute, regulatory provision, or court decision." *Suarez v. State*, 3 Wn.3d 404, 430 (Wash. 2024).

Moreover, the allegations in the FAC clearly establish that Ms. Jarmon was separated for being unvaccinated, not for requesting a religious exemption or accommodation. *See Leake v. Raytheon Techs. Corp.*, 2024 WL 1854287, at *2 (9th Cir. Apr. 29, 2024) ("the complaints' allegations confirm that the but-for cause of Plaintiffs' termination was not their religious objections to the vaccine, but rather Plaintiffs' refusal to comply with the conditions that [the employer] neutrally imposed on all non-vaccinated employees." (internal quotation marks

omitted)); *Adams v. Confluence Health*, 30 Wn. App. 2d 1010 (Wash. App. Div. 3, 2024).
Therefore, Ms. Jarmon's wrongful termination claim is dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (dkt. # 13) is GRANTED, the parties' Surreplies (dkt. ## 16-17) are STRICKEN as improper, and Ms. Jarmon's FAC (dkt. # 10) is DISMISSED with leave to amend.

Although the FAC (and lack of oppositional briefing to the instant Motion) suggests that any further amendment might well be futile, the Court will permit Ms. Jarmon one further opportunity to amend. Accordingly, Ms. Jarmon is granted **fourteen (14) days** from the date of this Order within which to file a Second Amended Complaint. If Ms. Jarmon fails to timely file a Second Amended Complaint, the Court will dismiss the case without further notice.

Dated this <u>24th</u> day of November, 2025.

MICHELLE L. PETERSON
United States Magistrate Judge